UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRITCHARD INDUSTRIES SOUTHWEST, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-931 |
| | § | |
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 5, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Pending before the Court is the declaratory plaintiff, Pritchard Industries Southwest, Inc.'s ("Pritchard") motion for summary judgment (Docket Entry No. 28). The defendants, Service Employees International Union Local 5 and Service Employees International Union Local 1 (collectively, "SEIU"), submitted a response to this motion (Docket Entry No. 43) and Pritchard submitted a reply in support of its motion (Docket Entry No. 49). Further pending before the Court is SEIU's amended motion for summary judgment (Docket Entry No. 30). Pritchard submitted a response to this motion (Docket Entry No. 50). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby grants Pritchard's motion in part, denies Pritchard's motion in part and denies SEIU's motion.

**II. Factual Background**

Pritchard provides cleaning and maintenance services for office buildings. SEIU is a property services union whose members are employed by Pritchard. On January 17, 2007, SEIU and Pritchard entered into a collective bargaining agreement (the "CBA"). Several employees of Pritchard (who are also SEIU members) assert that Pritchard has violated the terms of the CBA.

Accordingly, as detailed below, SEIU has brought several grievances against Pritchard that have led to the present litigation.

The CBA provides a procedure for the resolution of grievances between Pritchard and SEIU, with "grievance" being defined "as a dispute, claim or complaint involving the interpretation or application of the provisions of [the CBA] . . . ." Section 9.3 of the CBA provides that "[e]ffective January 1, 2009 the workweek for Employee[s] shall be a minimum of thirty (30) hours to be worked in five (5) consecutive days." Further, § 9.5 of the CBA states that "[d]ecisions of building owners or managers concerning energy issues are not subject to the grievance procedure. Energy issues include, but are not limited to, lighting, air conditioning, gang cleaning and energy savings devices."

In the course of its business, Pritchard cleans a building located at 919 Milam, Houston, TX, which is owned by Transwestern Investment Company ("Transwestern"). Further, it cleans a building located at 1401 Enclave, Houston, TX, which is owned by Parkway Realty Services ("Parkway"). Both Parkway and Transwestern have communicated to Pritchard that, due to concerns pertaining to energy costs, these buildings will not be open late enough into the evening to allow Pritchard's employees to work six hours each weekday (to bring these employees to the 30 hours per week required by the CBA). Specifically, Parkway has stated that the "additional run-time necessary to accommodate the [six hour] cleaning shift would result in significant and unnecessary increases in the building's energy consumption levels" and Transwestern has stated that "919 Milam will maintain the current 5 hour nightly cleaning schedule due to increased utility cost associated with increased cleaning hours and economic conditions." Pritchard communicated to SEIU that, because of these issues, the 30 hour work week would not be met at these locations.

Subsequently, SEIU filed grievances against Pritchard alleging a breach of the CBA (under § 9.3, which requires a 30 hour work week for SEIU members). Specifically, the aggrieved parties requested that, among other things, they "receive the minimum amount of hours" mandated by the CBA. Pritchard responded by arguing that this situation was not subject to the grievance procedure pursuant to § 9.5 of the CBA because the complaint dealt with "[d]ecisions of building owners or managers concerning energy issues."

On March 2, 2009, Pritchard filed suit in the 157th District Court, Harris County, Texas (Cause No. 2009-13224) requesting a declaration that it was not obligated to arbitrate SEIU's present complaints. On March 29, 2009, SEIU removed the suit to this Court, alleging that Pritchard's claims arise solely under federal law (specifically, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185).

**III. Contentions**

**A. The Plaintiff's Contentions**

Pritchard asserts that the present dispute is not subject to the CBA's grievance process and therefore, is not properly the subject of arbitration. Further, Pritchard argues that SEIU did not comply with procedural requirements of the grievance procedure, rendering SEIU's grievances non-arbitrable. Lastly, Pritchard asserts that SEIU's assertion of an invalid grievance against Pritchard constitutes a breach of contract.

**B. The Defendants' Contentions**

SEIU states that Pritchard's request for summary judgment is improper and this controversy should be arbitrated. To this end, SEIU argues that § 9.5 of the CBA can be read to prohibit arbitration of building managers' energy-related decisions, while still allowing arbitration of related grievances (such as the dispute over working hours at bar). Accordingly, it

asserts that Pritchard cannot maintain its burden to establish that the present controversy is not subject to arbitration under the CBA and thus, arbitration is proper in the present case. SEIU also states that Pritchard's claims relating to procedural requirements of the grievance procedure should be addressed by an arbitrator, not this Court.

**IV. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in

favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

**V. Analysis & Discussion**

**A. The Arbitration Request**

"To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Armstrong v. Assocs. Intern. Holdings Corp.*, 242 Fed. Appx. 955, 957 (5th Cir. 2007) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). The parties do not contest the validity of the arbitration agreement and as such, the Court must determine whether the dispute at bar is within the ambit of this agreement.

"[W]here [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 1352–1353 (1960)). In determining whether a disagreement falls within the scope of an arbitration agreement, the Court must look to the following:

> [I]n considering whether a grievance is subject to arbitration, courts must avoid consideration of the merits of the grievance. *See* [*Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987)] ("The court's function is to decide whether the claim asserted is the type of

> claim which the parties have agreed to arbitrate. In no way are the courts to consider the merits of a party's claim."). The only question is whether the Grievance is within the scope of the arbitration clause in the collective bargaining agreement. Finally, all doubts should be resolved in favor of arbitrability. *Id*. at 340.
>
> Although the Court must not consider the merits of the Grievance, it must make a reasonable inquiry into the character of the Grievance to determine whether it comes within the scope of the Parties' arbitration agreement. *See Int'l Union of Operating Eng'rs v. Sid Richardson Carbon Co.*, 471 F.2d 1175, 1178 (5th Cir.1973) . . . . Generally speaking, the Court must determine whether the Parties have agreed to arbitrate this dispute. *See Chevron*, 815 F.2d at 343. The scope of the Parties' agreement is outlined by the language of the arbitration clause.

*Tex. City Metal Trades Council, AFL-CIO v. Union Carbide Corp.*, 347 F. Supp. 2d 360, 363–64 (S.D. Tex. 2004). Under this standard, "an order prohibiting arbitration cannot be issued 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Tex. Intern. Airlines, Inc. v. Assoc. of Flight Attendants*, 498 F. Supp. 437, 446 (S.D. Tex. 1980) (quoting *United Steelworkers of America*, 363 U.S. at 582–83).

The CBA defines a "grievance" as "a dispute, claim, or complaint involving the interpretation or application of the provisions of [the CBA] which arises during the term of [the CBA]." Under Section 6.1 of the CBA, if a grievance is not resolved in a mutually satisfactory manner, "the employee's representative may submit the grievance for final and binding decision by an arbitrator . . . ." However, Section 9.5 of the CBA provides that the "[d]ecisions of building owners or managers concerning energy issues are not subject to the grievance procedure. Energy issues include, but are not limited to, lighting, air conditioning, gang cleaning and energy savings devices." Neither party contests whether the present dispute constitutes a "grievance" under the CBA. Accordingly, the outcome determinative question is whether the Section 9.5 exclusion from the grievance process applies at present. The Court finds that it does.

Pritchard argues that "the decision not to increase the minimum number of work hours at 919 Milam and 1401 Enclave was based solely on the decisions by Transwestern and Parkway to conserve energy and decrease related energy costs [and as such,] neither the Milam Grievance or Enclave Grievance is subject to the grievance procedure pursuant to § 9.5 of the CBA." In contrast, SEIU argues that:

> While § 9.5 prohibits employees from grieving to change the energy-related decisions of building owner/managers, the provision does not prohibit SEIU from grieving Pritchard's failures to provide the required minimum hours guaranteed by §§ 9.1–9.3. For example, where a building manager mandates that air conditioning be shut off at 10:00 p.m. to save energy, SEIU cannot grieve to alter that decision but can grieve Pritchard's failure to provide minimum hours, asking for alternative solutions such as earlier start times, split shifts, day cleaning, or the like. In SEIU's understanding, Article 9 frees Pritchard to obey building owners' energy decisions without facing a grievance, but does not free Pritchard to ignore its obligation to provide minimum hours of work.

To resolve this dispute, the Court must construe the terms of the CBA.

"Basic principles of contract interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements."[1] *Tech. Metallurgical Servs., Inc. v. Plumbers and Pipefitters Nat. Pension Fund*, No. 5:04CV230, 2006 WL 5631807, at *7 (E.D. Tex. Feb. 21, 2006) (citing *Smith v. ABS Indus., Inc.*, 890 F.2d 841, 845 (6th Cir. 1989)) (unreported opinion). "An unambiguous contract is construed according to the plain meaning of its express wording. Unambiguous contracts are enforced as written." *Pride Intern., Inc. v. Bragg*, 259 S.W.3d 839, 845 (Tex.App.—Houston [1st Dist.] 2008, no pet.) (citations omitted); *Tech. Metallurgical Servs., Inc.*, 2006 WL 5631807, at *7. "[A] contract is ambiguous if it is susceptible to more than one reasonable interpretation." *Frost Nat. Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310 (Tex. 2005) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.

---

[1] "While the interpretation of CBAs is governed by federal law, courts 'may draw upon state rules of contractual interpretation to the extent that those rules are consistent with federal labor policies.'" *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 377 (5th Cir. 2008) (quoting *Int'l Ass'n of Machinists & Aero. Workers v. Masonite Corp.*, 122 F.3d 228, 231 (5th Cir. 1997)).

2003)); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 377 (5th Cir. 2008). Extrinsic evidence cannot be considered in construing an unambiguous contract. *Cont'l Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 555 F.3d 399, 406–07 (5th Cir. 2009); *Montalvo v. Bekins Moving Solutions, Inc.*, 613 F. Supp. 2d 892, 897 (S.D. Tex. 2009) (applying Texas law). Unambiguous contracts are construed as a matter of law. *Jacobson v. DP Partners Ltd. P'ship*, 245 S.W.3d 102, 106 (Tex.App.—Dallas 2008, no pet.); *see also Daigre v. Jefferson Parish School Bd.*, No. Civ. A. 96-0856, 1997 WL 16621, at *4 (E.D. La. Jan. 16, 1997) (citing *Paperworkers v. Champion Int. Corp.*, 908 F.2d 1252 (5th Cir. 1986)).

Under this standard, the Court finds the pertinent parts of the CBA to be unambiguous. Section 9.5 sets forth that any decision of a building manager "concerning energy issues" is not subject to the grievance procedure. Further, pursuant to Article 6 of the CBA, arbitration is not possible absent fulfillment of the grievance procedure. Accordingly, under a plain language interpretation of the CBA, any decision by a building manager that "concern[s] energy issues" is not subject to arbitration.

Pritchard has presented uncontroverted evidence that Transwestern and Parkway's decisions to limit their cleaning schedules to less than six hours were attributable to energy consumption issues and the costs associated therewith. Specifically, in a communication to Pritchard, a representative of Parkway stated:

> We have made every feasible effort to control energy consumption, and these efforts are a direct result of our commitment to keep energy expenses, as well as other costs, at a minimum while continuing to offer premium service to our customers.
>
> We understand that your collective bargaining agreement (CBA) with SEIU stipulates that the work schedule for janitorial personnel increases as of January 1, 2009 to six hour shifts. We have considered the energy issues created by this change and have determined that the additional run-time necessary to

> accommodate the longer cleaning shift would result in significant and unnecessary increases in the building's energy consumption levels.
>
> Thus we are directing ISS to remain at the current cleaning shift times at the following locations: 1401 Enclave Parkway . . . .

Likewise, a Transwestern representative communicated the following to Pritchard:

> 919 Milam will maintain the current 5 hour nightly cleaning schedule due to increased utility cost associated with increased cleaning hours and economic conditions.

Pursuant to these statements, the Court determines that the decisions not to have janitorial services for six hours per day were attributable to energy concerns. Therefore, the arbitration provisions in the CBA are not applicable.

SEIU's attempts to recast its grievances as having nothing to do with building managers' energy concerns are not well taken. Regardless of the wording used in an argument, the Court will look to the substance of a claim or grievance to determine its legal effect. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 417 (5th Cir. 2004); *In re Stratford of Tex., Inc.*, 635 F.2d 365, 369 (5th Cir. 1981). Therefore, since present complaints arise from building managers' concerns about energy costs, they are subject to § 9.5 and arbitration is not proper.

**B. Pritchard's Breach of Contract Claim**

Pritchard asserts that by frivolously bringing a grievance premised upon building managers' decisions concerning energy issues, SEIU has breached the CBA. Specifically, Pritchard states that "[t]he summary judgment evidence shows that the SEIU breached the CBA by attempting to advance invalid grievances to arbitration even though the grievance procedure had never been completed. [Pritchard] has suffered significant damages in the form of attorney's fees in defending frivolous grievance and arbitration procedures."

"The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Mensa-Wilmot v. Smith Intern., Inc.*, 2009 WL 3931252, at *8 (Tex.App.—Houston [1st Dist.] Nov. 19, 2009, no pet.) (quoting *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex.App.—Houston [1st Dist.] 2008, pet. denied)). Assuming *arguendo* that Pritchard has established the first three elements of a breach of contract, it has failed to specifically establish what, if any, damages it has sustained. Accordingly, summary judgment for Pritchard is not appropriate on this issue, and Pritchard's associated request for attorney's fees is improper.[2]

**VI. Conclusion**

Based on the above, the Court hereby GRANTS Pritchard's motion in part, DENIES Pritchard's motion in part and DENIES SEIU's motion.

It is so **ORDERED.**

SIGNED at Houston, Texas this 26th day of January, 2010.

Kenneth M. Hoyt
United States District Judge

[2] Any relief sought in either Pritchard's motion or SEIU's motion that is not expressly granted is hereby denied.